FILED
2009 Sep-11 AM 10:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **ERWIN McCRARY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case. No.: 5:08-CV-0431-RDP** |
| | } | |
| **MICHAEL J. ASTRUE, Commissioner of Social Security,** | } | |
| | } | |
| | } | |
| **Defendant.** | } | |

**MEMORANDUM OF DECISION**

Plaintiff Erwin McCrary brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") under the Act. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

## I. Procedural History

Plaintiff filed his application for a period of disability and disability insurance benefits on September 15, 2005.[1] (Tr. 17, 52-54). Plaintiff's application was denied and he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 39-45). Plaintiff's case was heard by ALJ

[1] ALJ Digby states that the application was filed on August 31, 2005. (Tr. 17). Plaintiff states in his Memorandum of Law in Support of Plaintiff's Argument that the application date was September 5, 2005. (Doc. #6). The Application for Disability Insurance Benefits is dated September 15, 2005. (Tr. 52). Although selecting any one of these dates will not affect the application and decision of the Commissioner, the court determines that the evidence supports the application date as September 15, 2005. (Tr. 37, 52-54, 411).

Patrick R. Digby on June 19, 2007. (Tr. 17, 419-54). In his August 14, 2007 decision, ALJ Digby determined that Plaintiff was not eligible for a period of disability or DIB because he failed to establish that he has an impairment or combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and because he retains the residual functional capacity ("RFC") to perform a limited range of light work. (Tr. 14-30).

The Appeals Council denied Plaintiff's request for review of ALJ Digby's decision on January 10, 2008. (Tr. 6-8). The ALJ's decision became the final decision of the Commissioner upon denial by the Appeals Council, and therefore, a proper subject for this court's review. (Tr. 6). Plaintiff filed a civil action in this court on March 10, 2008. *McCrary v. Astrue*, Case No. 5:08-cv-0431-NE.

## II. Personal and Medical History

Plaintiff was born on October 26, 1959 and has completed the twelfth grade. (Tr. 52, 423). Plaintiff worked primarily as a maintenance aide for the Huntsville Housing Authority from 1990 until 2005. (Tr. 109, 424). Plaintiff alleges that he has been unable to engage in substantial gainful activity since June 29, 2005, due to arthritis in his right knee, ankle, and fractured ankles. (Tr. 17, 85).

Plaintiff was admitted to Huntsville Hospital and treated for a knee injury on September 30, 2003. (Tr. 128-33). An MRI was administered and showed a lateral tibial plateau fracture with depression of the joint surface. (Tr. 128-33). Plaintiff received treatment from Dr. Wayne Goodson for this injury. (Tr. 129). Plaintiff underwent an Open Reduction Internal Fixation ("ORIF") of the left lateral tibial plateau fracture with cancellous allograft bone grafting and repair of the popliteus tendon and the lateral collateral ligament. (Tr. 129-30). Plaintiff returned to Dr. Goodson on

October 14, 2003 and indicated his pain was much better. (Tr. 190). In December 2003, X-rays showed the fracture was healing well. (Tr. 186). In January 2004, X-rays showed continued healing of the fracture, and Plaintiff was instructed to continue strengthening exercises. (Tr. 185).

Plaintiff saw Dr. Kendall Black on February 4, 2004 for a second opinion. (Tr. 154). Plaintiff reported he was having some persistent swelling, still some weakness, some discomfort with weight bearing, no paresthesias, and no giving way. (Tr. 154). Dr. Black's examination showed Plaintiff's ACL and collaterals appeared to be intact and there was no joint line tenderness. (Tr. 154). Dr. Black indicated that Plaintiff should stay with his present rehabilitation. (Tr. 154).

Plaintiff returned to Dr. Goodson on February 12, 2004 and presented with increased ankle pain. (Tr. 184). X-rays on the ankle were negative for a fracture, but did show calcification of the deltoid ligament on the medial side. (Tr. 184). In June 2004, Plaintiff underwent left knee arthroscopy with partial medial and lateral meniscectomies and chondroplasty of his patella. (Tr. 179). On June 25, 2004 Plaintiff returned to Dr. Goodson and complained of pain in his right ankle when walking a considerable amount. (Tr. 179).

On July 16, 2004, Plaintiff presented to Dr. Black with pain over his right ankle. (Tr. 147). Dr. Black opined Plaintiff had peroneal tendonitis due to a chronic sprain of the right ankle. (Tr. 147). Dr. Black placed Plaintiff in a CAM walker. (Tr. 147). Plaintiff returned to Dr. Goodson in August 2004 complaining of discomfort and pain in his ankle and knee. (Tr. 176-77). Plaintiff stated his pain was improved in the CAM walker. (Tr. 176). Dr. Goodson gave Plaintiff an air splint for his ankle and a light hinged knee brace, and informed Plaintiff he could return to light duty at work. (Tr. 176). On February 28, 2005 Plaintiff presented to Dr. Goodson with complaints of

continued pain in his right ankle, mostly when bearing weight. (Tr. 170). Plaintiff was diagnosed with right osteochondral lesion of talus and mild degenerative changes. (Tr. 170).

Plaintiff was seen in the emergency room at Crestwood Medical Center on May 8, 2005. (Tr. 160-65). Plaintiff was experiencing left ankle pain after stepping down a step. (Tr. 161). X-rays were negative and Plaintiff refused crutches. (Tr. 164-65). On June 27, 2005, Plaintiff was seen by Dr. Goodson. Dr. Goodson's notes indicate Plaintiff had backed out of a scheduled right ankle arthroscopy. (Tr. 166). Dr. Goodson's examination showed Plaintiff had full range of motion of the left knee, and the swelling of the left thigh had improved. (Tr. 166). Plaintiff was also able to do straight leg raises without difficulty. (Tr. 166).

On June 30, 2005, Plaintiff was seen by Dr. Richard Brown for a comprehensive medical evaluation. (Tr. 209). Dr. Brown noted that Dr. Goodson, an orthopedic surgeon, had done all he could do for Plaintiff.[2] (Tr. 209). Dr. Brown recommended vocational rehabilitation. (Tr. 209). Plaintiff returned to Dr. Brown on July 28, 2005 to go over laboratory results. (Tr. 208). All of Plaintiff's laboratory results were normal. (Tr. 208).

On August 2, 2005, Plaintiff presented to Dr. Brian Carter with complaints of ankle and knee pain. (Tr. 194-95). Dr. Carter reviewed Plaintiff's functional capacity evaluation ("FCE") which overall showed very inconsistent effort on Plaintiff's part. (Tr. 194-95). Plaintiff's work duty classification was light.[3] (Tr. 194-95). Dr. Carter opined the FCE was an invalid test, and noted it showed evidence of symptom amplification and poor effort. (Tr. 195). Dr. Carter also noted specific

[2]Dr. Brown also noted that the next thing Dr. Goodson could offer Plaintiff was total joint replacement surgery, but Plaintiff was very apprehensive about this next step. (Tr. 209).

[3]The FCE showed that Plaintiff had some limitations with walking, carrying ten pounds, balance, crouching, and kneeling.

limitations of standing and walking for more than four hours at a time without a break, and some mild lifting limitations. (Tr. 195). Dr. Carter did state Plaintiff could probably perform most lifting activities at the medium level. (Tr. 195).

Plaintiff returned to Dr. Brown on September 12, 2005 with complaints of left hand pain. (Tr. 208). Dr. Brown's diagnosis was left hand pain related to the use of a cane, resulting in some tendonitis. (Tr. 208). Dr. Brown prescribed a different cane and gave Plaintiff Mobic. (Tr. 208). Dr. Brown opined that Plaintiff was medically disabled to work. (Tr. 397).

Between July 1, 2005 and October 12, 2005, Plaintiff saw Dr. Danny Blanchard at the Professional Counseling Services Center for treatment of depression and anxiety. (Tr. 269-77). Dr. Blanchard's treatment notes show Plaintiff's mental status to be normal. (Tr. 404-09).

On November 7, 2005, Carol Walker, Ph.D., performed an evaluation of Plaintiff. (Tr. 239-45). Plaintiff stated he was disabled, and that he had constant pain in his left knee and right ankle. (Tr. 239). Plaintiff also stated his mood as depressed, but he was not being treated for this condition. (Tr. 240). Dr. Walker tested Plaintiff, but stated the results as presented could not be considered reliable or valid due to an incomplete effort on Plaintiff's part. (Tr. 241). Dr. Walker's diagnosis was depressive disorder, but prognosis was good and Plaintiff's mental impairment was mild. (Tr. 241).

Plaintiff was seen in the emergency room at Huntsville Hospital on November 9, 2005 with complaints of left knee and bilateral ankle pain. (Tr. 279-86). The diagnosis was simply stated to be knee and ankle pain. (Tr. 284).

Plaintiff was seen by John McKinney, III, a Certified Rehabilitation Counselor, for an assessment on December 13, 2005. (Tr. 371-76). Mr. McKinney noted, and relied on the limitations

placed on Plaintiff by Dr. Goodson and Dr. Carter. (Tr. 371-76). Mr. McKinney found that Plaintiff would have incurred a vocational disability ranging from 45 to 60%. (Tr. 376). Mr. McKinney opined it did not appear that Plaintiff was capable of acquiring, performing, or maintaining any type of substantial gainful employment. (Tr. 376). Based on this opinion, Mr. McKinney considered Plaintiff to be 100% vocationally disabled. (Tr. 376).

Plaintiff returned to Dr. Brown on February 7, 2006 complaining of headaches. (Tr. 396). Dr. Brown noted that Plaintiff's headaches were probably related to his blood pressure. (Tr. 396). On February 16, 2006, Dr. Brown completed a Clinical Assessment of Fatigue/Weakness and found that Plaintiff was totally restricted and unable to function at a productive level of work. (Tr. 380).

Plaintiff was seen by Dr. Brown on June 20, 2006 complaining of tightness in his chest. (Tr. 396). Dr. Brown noted that the tightness was likely a result of exercise. (Tr. 376). On July 14, 2006 Dr. Brown noted that Plaintiff continued to have discomfort in his ankle and knee. (Tr. 393). Dr. Brown talked to Plaintiff about getting into vocational rehabilitation in order to train for work that would not involve standing or lifting. (Tr. 393).

Plaintiff was seen by Dr. Keith C. Anderson, D.O., on September 12, 2006. (Tr. 387-89). Dr. Anderson examined Plaintiff's left knee and right ankle, and found good range of motion with some pain. (Tr. 388). Dr. Anderson noted Plaintiff ambulated independently with a straight cane, and that he had been fitted with a left knee brace and right ankle brace. (Tr. 388-89). Dr. Anderson also noted these braces would need to be adjusted and eventually replaced. (Tr. 387).

Plaintiff returned to Dr. Brown on January 12, 2007 with complaints of pain on the left side of his pelvis. (Tr. 391-92). X-rays revealed a bone spur, which Dr. Brown stated was the source of

Plaintiff's pain. (Tr. 391). Dr. Brown stated that this would stabilize itself over time and that there was nothing further to be done. (Tr. 391).

Plaintiff returned to Dr. Anderson on January 23, 2007. (Tr. 385-86). Dr. Anderson's examination showed Plaintiff's condition unchanged. (Tr. 386). Dr. Anderson recommended Plaintiff attend physical therapy three times per week for four weeks. (Tr. 386).

Plaintiff saw Dr. Brown again on February 6, 2007 with complaints of pain under his right clavicle. (Tr. 391). No displacement or deformity was found. (Tr. 391). Dr. Brown's diagnosis was that Plaintiff's pain was caused by pulling something and it would take time to heal. (Tr. 391).

On March 1, 2007 Dr. Anderson discharged Plaintiff from physical therapy. (Tr. 402-03). Dr. Anderson noted that Plaintiff complained more about weakness than pain, and his leg was stronger. (Tr. 402-03). Finally, Dr. Anderson noted that Plaintiff was limping more from habit than necessity or pain and that this would be corrected over time with training and strengthening. (Tr. 402-03).

## III. ALJ Decision

Determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq*. First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work. The claimant's RFC consists of what the claimant can do despite his impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work

experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged June 29, 2005 onset of disability. (Tr. 19). The ALJ determined that Plaintiff has the following severe combination of impairments: post open reduction and internal fixation (ORIF) of left the tibial plateau fracture; left knee degenerative joint disease; chronic left knee and ankle pain; history of right ankle sprain with mild osteochondral defect; hypertension; and a depressive disorder. However, the ALJ found that Plaintiff's impairments, considered either alone or in combination, fail to meet or medically equal the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1. (Tr. 19, 26). According to the ALJ, Plaintiff's subjective complaints concerning his impairments and their impact on his ability to work are not fully credible because "the record reflects that the claimant's treatment and medication has been successful in controlling his symptoms." (Tr. 28). The ALJ noted that although Dr. Brown, one of Plaintiff's treating physicians, recommended

vocational rehabilitation in order to receive training for a job that would not require Plaintiff to be physically on his feet much at all. (Tr. 28, 383). The ALJ did note, however, that although Dr. Brown was Plaintiff's treating family physician, he was not one of Plaintiff's treating orthopedic physicians. (Tr. 29). It was also noted by the ALJ that Dr. Carter opined that Plaintiff gave inconsistent effort during his FCE. (Tr. 28). Dr. Anderson stated after treating Plaintiff that the limp was more from habit than necessity or pain and could be corrected. (Tr. 29). The treating orthopedic physician noted that Plaintiff was limited to medium exertional demand level. (Tr. 28). The ALJ also noted that Plaintiff admitted at the hearing that he would be able to do jobs that consisted of sitting and standing, and viewing a video screen. (Tr. 28, 426, 428). Finally, concerning Plaintiff's depression and anxiety, the ALJ noted that although Plaintiff saw Dr. Blanchard for some treatment, the treatment was essentially routine and conservative, and that it was successful in controlling Plaintiff's symptoms. (Tr. 29).

A vocational expert ("VE") testified that Plaintiff would be able to perform his past relevant work as a telephone operator. (Tr. 447-48). The VE also testified that Plaintiff would be able to perform other work. (Tr. 449-50). The ALJ determined that Plaintiff retains the RFC to perform light and sedentary work, and is capable of performing past relevant work as a telephone operator. (Tr. 29-30).

## IV. Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner when the Appeals Council refused to grant review, reversed, or in the alternative, remanded for further consideration. (Doc. # 6). Plaintiff asserts that (1) the ALJ did not give proper

weight to one of Plaintiff's treating physicians, Dr. Richard Brown, and instead substituted his "own hunch or intuition," and (2) the ALJ did not give proper weight to VE. (Doc. #6).

## V. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI. Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand and/or reversal. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and applied the proper legal standards.

### A. The ALJ Considered All the Medical Evidence, Including Dr. Richard Brown's Treatment, Before Making a Final Determination.

Plaintiff argues that the ALJ did not give Dr. Richard Brown's treatment and opinion of Plaintiff's injury proper weight. (Doc. # 6). Specifically, Plaintiff argues that substantial or considerable weight must be given to the treating physician. (Doc. # 6 at 8-9). Plaintiff points out the considerable period of time Dr. Brown has been one of Plaintiff's treating physicians. (Doc. # 6 at 9). Plaintiff further argues that no medical evidence countered Dr. Brown's conclusions, and that the ALJ did not provide "good cause" in order to discount Dr. Brown's testimony. (Doc. # 6 at 9). Based on these arguments, Plaintiff contends that Dr. Brown's opinion should be taken as true as a matter of law. (Doc. # 6 at 9).

Defendant argues that the ALJ properly considered the medical evidence. (Doc. # 7 at 5). Defendant also states that there must be relevant evidence to support a treating physician's opinion. (Doc. # 7 at 5). Defendant notes that the ALJ had clear reasons for not accepting Dr. Brown's conclusory statement that Plaintiff is completely disabled and unable to perform any work: (1) Plaintiff's continued work after the 2003 injury; (2) the notes and opinion of Dr. Wayne Goodson, an orthopedic surgeon who was one of Plaintiff's treating physicians; (3) the fact that Dr. Brown is Plaintiff's family physician and not one of the treating orthopedic physicians; (4) Dr. Brown's opinion is not consistent with his own findings on examination; (5) the fact that Dr. Brown

recommended vocational rehabilitation in order to receive training for work; and (6) Dr. Brown's opinion is inconsistent with Dr. Brian Carter, another treating orthopedist. (Doc. # 7 at 5-8). Recognizing that the ALJ is required to provide good reasons for giving Dr. Brown's opinion little weight, Defendant argues that these reasons satisfy the ALJ's decision. (Doc. # 7 at 10).

The ALJ must give considerable weight to a claimant's treating physician. *See* 20 C.F.R. § 404.1527(d)(2); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). However, if there is good cause shown to the contrary the ALJ is not required to give the treating physician's testimony considerable weight. *Crawford*, 363 F.3d at 1159. Although Plaintiff contends that Dr. Brown's opinion is conclusive of a disability finding, a review of the record and the ALJ's decision demonstrates that the ALJ provided sufficient cause for his findings.

The ALJ found that Plaintiff could return to his past work and perform a limited range of light work. (Tr. 26-30). In making this determination, the ALJ recognized Dr. Brown as Plaintiff's treating physician. (Doc. # 6 at 28). On September 22, 2005, Dr. Brown stated that Plaintiff was "medically disabled to work." (Tr. 397). An FCE performed by Dr. Brown on February 14, 2006 concluded that Plaintiff could do the following: lift ten pounds occasionally; sit for three hours in an eight hour workday; occasionally reach overhead and use gross and fine manipulation; and also operate motor vehicles. (Tr. 378). These findings, coupled with Dr. Brown's assessment of Plaintiff's pain, led Dr. Brown to state that Plaintiff was unable to function at a productive level of work. (Tr. 380). However, on July 14, 2006 Dr. Brown noted that Plaintiff was "still waiting on [a] disability determination." (Tr. 393). On this date Dr. Brown also noted that Plaintiff was in "fairly good health" and that he talked with Plaintiff about getting in to vocational rehabilitation to get trained to do some area of work that would not involve having to stand or lift. (Tr. 393).

Plaintiff argues that Dr. Brown's report must be accepted, and that the ALJ failed to properly consider Dr. Brown's opinion. (Doc. # 6 at 9). The court disagrees. The relevant part of Dr. Brown's medical opinion is his assessment of Plaintiff's functional limitations, not the effect those limitations may have on Plaintiff's ability to work. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (stating that "the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality"). In other words, the ALJ's task in using Dr. Brown's report is not to speculate how Dr. Brown would rule if he were an ALJ, but to ascertain what medical limitations afflict Plaintiff. Dr. Brown's medical opinion is that Plaintiff can sit, reach, lift, and carry within the listed limitations. Dr. Brown also discussed vocational rehabilitation with Plaintiff six months after the FCE.[4] Dr. Brown's statement of Plaintiff's limitations are consistent with light and sedentary work with limitations.

In considering the limitations and the conclusions offered by Dr. Brown, the ALJ recognized that:

---

[4] Dr. Brown relied in part on Plaintiff's own subjective statements of pain. The ALJ, applying the pain standard, considered all the symptoms on which Plaintiff presented evidence, but also weighed them against their compatibility with the objective medical evidence. (Tr. 26). Although Plaintiff does not argue that the ALJ did not give adequate weight to his credibility and his own pain assessment, this court notes that the ALJ considered Plaintiff's pain assessment. (Tr. 27). Because Plaintiff's symptoms suggested "a greater level of severity of impairment than can be shown by the objective medical evidence," the ALJ considered other factors required by 20 C.F.R. 404.1529(c). (Tr. 27). When considering these factors the ALJ considered the fact that Plaintiff is able to drive, that he buys and carries 5-pound bags of flour and sugar, that he worked in a sit down job after the injury, and that he testified he would return to the job of sitting and standing and viewing a video screen if offered by an employer. (Tr. 428-29). Based on the medical evidence and Plaintiff's testimony, the ALJ found that Plaintiff's statements concerning intensity, persistence and limiting effects were not entirely credible. (Tr. 28).

> While Dr. Brown is [Plaintiff]'s treating family physician, he is not one of [Plaintiff]'s treating orthopedic physicians and his opinion is not consistent with his own findings on examination, his own recommendations that [Plaintiff] obtain the services of vocational rehabilitation, or the medical evidence of the record as a whole.

(Tr. 29). The medical evidence as a whole included the treatment records and notes of Dr. Goodson and Dr. Carter, Plaintiff's two treating orthopedists. This substantial evidence was sufficient for the ALJ to discount Dr. Brown's statements that Plaintiff suffered an incapacitating level of pain.

Dr. Goodson treated Plaintiff on September 18, 2003 after his injury to his left knee. (Tr. 192). Dr. Goodson's records are consistent with an opinion of improved condition and limitations provided. Throughout the follow-up visits, Dr. Goodson stated that Plaintiff's knee injury was healing well and on January 26, 2004 Dr. Goodson noted that Plaintiff had full range of motion. (Tr. 185). Plaintiff was treated by Dr. Goodson on February 12, 2004 for ankle pain. X-rays were negative for a fracture. (Tr. 184). Follow-up visits with Dr. Goodson showed that Plaintiff's ankle was doing better. (Tr. 183). In June 2004, Dr. Goodson noted that Plaintiff was continuing physical therapy and that he was allowed to do a sedentary position at work. (Tr. 179). Dr. Goodson saw Plaintiff again August 16, 2004 and informed him that he could go back to light duty at work. (Tr. 176). In November 2004 Dr. Goodson noted that Plaintiff could still work with the current restrictions. (Tr. 173). Dr. Goodson's last notes regrading Plaintiff on June 27, 2005 state that he was "doing quite well," and that "he can begin to increase his activities." (Tr. 166).

Plaintiff was seen by Dr. Carter on January 18, 2005. (Tr. 200-05). At this time Plaintiff was not complaining of severe knee pain. (Tr. 200). Dr. Carter continued to see Plaintiff, and consulted with Dr. Goodson. (Tr. 194-98). Dr. Carter reviewed Plaintiff's FCE, and on August 2, 2005 noted that it showed "very inconsistent effort," and symptom amplification. (Tr. 195). Dr. Carter was

provided with Plaintiff's job description, and based on the limitations, stated that he did "not see any real clear medical reason why [Plaintiff] cannot perform the essential functions of this job." (Tr. 195). Regarding specific limitations, Dr. Carter stated Plaintiff would be limited in standing and walking for more than four hours at a time without a break, and that Plaintiff had some mild lifting limitations. (Tr. 195). Based on the totality of the medical evidence in the record, the ALJ found that Dr. Brown's opinion that Plaintiff was unable to work was inconsistent with his own medical records, as well as the medical records of Plaintiff's treating orthopedic physicians, Dr. Goodson and Dr. Carter.

The record confirms that the ALJ had substantial evidence to find Plaintiff was not under a disability as defined in the Act. The court finds that the ALJ relied upon substantial evidence and did not err in relying upon Dr. Goodson and Dr. Carter's opinions as good cause to discount the opinion of Dr. Brown. There is also substantial evidence to support the ALJ's decision that Dr. Brown's opinion is not consistent with his treatment and notes. The ALJ also relied on the testimony of Plaintiff. The ALJ noted that Plaintiff admitted at the hearing that if his employer asked him back that he could do a job of sitting and viewing a video screen. (Tr. 29, 428-29).

Dr. Brown's opinion that Plaintiff cannot work goes beyond a mere medical opinion. Doctors' opinions are only evidence of medical conditions and their legal opinions are not entitled to any weight unless supported by the medical evidence. 20 C.F.R. § 404.1527(e)(1) (2006) (stating that the Commissioner is responsible for determining whether a claimant is disabled and "[a] statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [a claimant is] disabled"); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) ("we note that we are concerned here with doctors' evaluations of [a

plaintiff's] condition and the medical consequences thereof, not their opinions of the legal consequences of his condition"); *Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986) (stating that "although a claimant's physician may state he is 'disabled' or 'unable to work' the agency will nevertheless determine disability based upon the medical findings and other evidence").

The court is satisfied that the ALJ considered Dr. Brown's opinion and gave reasons for discounting it.[5] The ALJ noted that:

> Consideration has been given to the December 2005 State Agency medical consultants' opinions regarding [Plaintiff]'s physical and mental limitations. Little weight has been given to either opinion as the State Agency medical consultants neither examined nor treated the claimant and did not have access to the more recently submitted medical records. Little weight has been given to the opinions of Dr. Brown who opined [Plaintiff] was medically disabled to work, or suffered the extent of pain and fatigue he circled on the pre-printed form.

(Tr. 29). Furthermore, the ALJ expressed valid reasons to discount Dr. Brown's opinion. Dr. Brown's opinion conflicted with Dr. Goodson's and Dr. Carter's assessments, and, because all are treating physicians, the ALJ had to decide which opinion to credit over the other. Good cause for rejecting the opinion of a treating physician exists where that physician's opinion conflicts with the medical evidence or is merely conclusory. *See Lewis*, 125 F.3d at 1440 (stating that "'good cause' [exists] where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding" and "good cause [exists] where the doctors' opinions were conclusory or inconsistent with their own medical records") (quotations and citations omitted). Resolving conflicts in the evidence is emphatically the role of the ALJ, and this court will not overturn the ALJ's evidentiary conclusions when they are supported by substantial evidence. *Bloodsworth*, 703

---

[5] Although not argued in either Plaintiff's or Defendant's briefs, the court is also satisfied that the ALJ considered Plaintiff's subjective pain assessment and that the ALJ gave reasons for discounting those assessments.

F.2d at 1239, 1242 (stating that "credibility determinations are for the Secretary, not the courts"). Here there is indeed substantial evidence to support the ALJ's findings.

**B. The ALJ Was Not Required to Adopt the Vocational Expert Report Provided by John McKinney Once the ALJ Determined Plaintiff was Capable of Performing Past Work.**

Plaintiff received a vocational assessment and report from John McKinney, III dated December 13, 2005, as part of his workers compensation case. (Tr. 371-76). In that report, Mr. McKinney relies on the medical records provided by Dr. Goodson and Dr. Carter. (Tr. 371-76). Based on those medical reports Mr. McKinney found that Plaintiff could not perform future work activities "above a limited Medium exertional demand level." (Tr. 376). Including Plaintiff's assessment of his pain and other factors, Mr. McKinney concluded that Plaintiff was unable to work. (Tr. 376). Plaintiff argues that the ALJ failed to give proper weight to this report. (Doc. #6). The court disagrees.

"The testimony of a vocational expert is only required to determine whether the claimant's residual functional capacity permits him to do other work after the claimant has met his initial burden of showing that he cannot do past work." *Schnoor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987); *see also Lucas v. Sullivan*, 918 F.2d 1567, 1573 (11th Cir. 1990) (stating vocational expert was not necessary after a determination that claimant could return to past relevant work). The ALJ determined that Plaintiff was able to return to his past work. (Tr. 29). Once this determination was made, there was no requirement to obtain testimony from a VE.

Nevertheless, even though it was unnecessary to require a VE, ALJ Digby considered Mr. McKinney's report, and found that, like Dr. Brown's conclusions, that they were inconsistent with the medical evidence as a whole. (Tr. 23-24, 28). The ALJ did consider the testimony of the VE

who testified at the hearing. (Tr. 29-30). The testimony of the VE shows that her answers were based on hypothetical questions which reflected Plaintiff's credible limitations.[6] (Tr. 446-50). The VE testified that Plaintiff could return to his past relevant work, as well as other work. (Tr. 446-50). Therefore, even if a VE was necessary, the ALJ not only considered the report prepared by Mr. McKinney, but the ALJ also heard the testimony of a VE at the hearing before making a final determination. The ALJ's decision was based on substantial evidence and the proper legal standards were applied.

## VII. Conclusion

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this 10th day of September, 2009.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

[6] The questions posed to the VE at the hearing were proper because they adequately "comprise[d] all of the [plaintiff's] impairments." *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999), *cert. denied*, 529 U.S. 1089 (2000)).